[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14143

_____

D.C. Docket No. 6:19-cr-00066-GKS-GJK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JERRY SANCHEZ CARRASQUILLO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 14, 2021)

Before JORDAN, NEWSOM, and TJOFLAT, Circuit Judges.

JORDAN, Circuit Judge:

Jerry Sanchez Carrasquillo appeals his 60-month sentence for conspiracy to
possess cocaine with intent to distribute and possession of cocaine with intent to

distribute. *See* 21 U.S.C. §§ 841, 846. Procedurally, he contends that the district court erred by failing to elicit objections after imposing his sentence. *See United States v. Jones*, 899 F.2d 1097, 1102 (11th Cir. 1990), *overruled in part on other grounds by United States v. Morrill*, 984 F.2d 1136 (11th Cir. 1993) (en banc). Substantively, he argues that the district court improperly conflated the standards under U.S.S.G. § 2D1.1(b)(1) and U.S.S.G. § 5C1.2(a)(2) when it denied him safety-valve relief after finding that he was subject to a two-level enhancement for possessing a firearm.

We agree with Mr. Carrasquillo that the district court committed a *Jones* error, but we conclude that the record is sufficient to permit appellate review of the sentencing issue he raises. On the merits, we acknowledge that there is daylight between the standards under § 2D1.1(b)(1) and § 5C1.2(a)(2), and that application of a firearm enhancement does not necessarily preclude safety-valve relief. We nonetheless affirm because, on this record, the district court's factual findings under § 2D1.1(b)(1) foreclosed relief under § 5C1.2(a)(2).

## I

In April of 2019, a grand jury charged Mr. Carrasquillo with conspiracy to possess 500 grams or more of cocaine with intent to distribute, in violation of 21 U.S.C. § 846, and possession of 500 grams or more of cocaine with intent to

distribute, in violation of 21 U.S.C § 841(a)(1). Mr. Carrasquillo pled guilty without a plea agreement to both charges.

## A

The incident that led to the charges took place in November of 2017, when a federal agent posing as a FedEx employee delivered a package containing one kilogram of cocaine to the home of Mr. Carrasquillo's mother-in-law. While Mr. Carrasquillo watched from a pickup truck parked in the driveway, his wife signed for the package. After the delivery, Mr. Carrasquillo went into the home and brought the package out to his truck, but then took the package back inside as officers approached. When officers searched the home following Mr. Carrasquillo's arrest, they found his permit to carry a concealed firearm. They then searched his truck and found a loaded Glock handgun in the center console.

The probation office recommended a two-level increase on account of the Glock. *See* U.S.S.G § 2D1.1(b)(1) (providing for such an adjustment if a dangerous weapon, including a firearm, "was possessed"). Mr. Carrasquillo objected to this proposed enhancement, arguing that the firearm was legally owned, validly licensed in Florida, and not connected to the narcotics offense. The probation office responded that, under *United States v. Stallings*, 463 F.3d 1218, 1220 (11th Cir. 2006), the § 2D1.1(b)(1) enhancement applies if the weapon was present, unless it is "clearly improbable" that it was connected with the offense.

3

Mr. Carrasquillo also objected to not receiving a two-level downward adjustment under U.S.S.G. § 5C1.2—the so-called "safety-valve" provision—which permits the district court to impose a sentence without regard to an otherwise-applicable mandatory minimum (and provides for a defendant to receive a two-level downward adjustment) if certain criteria are satisfied. *See, e.g.,* § 5C1.2(a)(2) (providing for such relief if the defendant, among other things, did not "possess a firearm . . . in connection with the offense"). He argued that a § 2D1.1(b)(1) enhancement does not preclude satisfaction of § 5C1.2(a)(2) and that, because he did not use or possess a firearm in connection with the offense, he was eligible for safety-valve relief. The probation office maintained that Mr. Carrasquillo was ineligible for safety-valve relief because he possessed the firearm in connection with the offense.

**B**

According to the government's theory of the case, Mr. Carrasquillo intended to drive his truck with the kilogram of cocaine—worth $30,000—and was going to use the Glock to protect himself if someone tried to take the contraband from him. At the sentencing hearing, Orange County Sheriff's Deputy David Alvarado testified for the government. He explained that he had found the Glock loaded, with a round in the chamber, in a holster in the truck's center console. *See* D.E. 120 at 10. Mr. Carrasquillo did not testify or put on evidence.

4

The district court sided with the government and overruled Mr. Carrasquillo's objection to the § 2D1.1(b)(1) enhancement. It found that if Mr. Carrasquillo had not been arrested, he would have "drive[n] off with the cocaine with the protection of the firearm." *Id*. at 15. It explained that the cocaine was "in the truck, and [Mr. Carrasquillo] was protecting it with a loaded pistol. So it was definitely connected." *Id*. at 14.

Without application of § 5C1.2, Mr. Carrasquillo's advisory guideline range was 46-57 months in prison, but each count carried a mandatory minimum sentence of five years. Had Mr. Carrasquillo received safety-valve relief, there would not have been a five-year statutory minimum, and his advisory guideline range would have been 37-46 months in prison.

The district court imposed concurrent sentences of 60 months of imprisonment followed by three years of supervised release. Following imposition of the sentence, the district court asked Mr. Carrasquillo: "Is there anything you'd like to state to the Court now that you have been sentenced?" Mr. Carrasquillo replied by saying "[t]hank you." D.E. 120 at 16.

## II

Whether the district court elicited objections at sentencing, as required by *Jones*, 899 F.2d at 1102, is a procedural question of law that we review *de novo*. *See United States v. Campbell*, 473 F.3d 1345, 1347-48 (11th Cir. 2007) (exercising

plenary review on a *Jones* issue). A district court "must elicit a full articulation of the grounds upon which any objection is based," and commits a *Jones* error if, after imposing sentence, it fails to "give the parties an opportunity to object to the court's ultimate findings of fact, conclusions of law, and the manner in which the sentence is pronounced." *Id.* at 1347.

In cases where there has been a *Jones* error, "we normally vacate the sentence and remand to the district court to give parties an opportunity to present their objections." *Id*. "[R]emand is unnecessary, however, when the record on appeal is sufficient to enable review." *Id*. For example, a record permits meaningful review when "the same objections raised on appeal had been argued before sentence was imposed." *United States v. Gates*, 967 F.2d 497, 500 n.1 (11th Cir. 1992).

Both parties submit, and we agree, that the district court committed a *Jones* error by failing to elicit objections following its imposition of Mr. Carrasquillo's sentence. The district court's question to Mr. Carrasquillo after announcing his sentence ("Is there anything you'd like to state to the Court now that you have been sentenced?") very much resembled the query we found insufficient in *Campbell*. There, the district court simply informed the defendant of his right to appeal and asked, "Is there anything further?" *Campbell*, 473 F.3d at 1347.

The parties part ways, however, with respect to whether remand is warranted. Mr. Carrasquillo urges us to send the case back for a new sentencing hearing. In his

view, the district court failed to adequately address his legal objections and to recognize that those objections required different legal analyses under § 2D1.1(b)(1) and § 5C1.2(a)(2). The government, on the other hand, contends that the record is "sufficient for meaningful appellate review," *United States v. Johnson*, 451 F.3d 1239, 1242 (11th Cir. 2006), and would not be further developed in any significant way on remand.

We conclude that the record allows for meaningful appellate review. First, Mr. Carrasquillo raised, explained, and preserved his safety-valve claim. *See* D.E. 120 at 5-7. Second, the district court made factual findings under § 2D1.1(b)(1) which foreclosed safety-valve relief under § 5C1.2. *See Gates*, 967 F.2d at 500 n.1. On this record, a remand would be a meaningless exercise.

### III

Mr. Carrasquillo raised two objections at sentencing. His first objection was to the probation office's application of the two-level firearm enhancement under § 2D1.1(b)(1). His second objection was to the probation office's failure to apply the two-level downward adjustment available to defendants who meet the safety-valve criteria identified in § 5C1.2(a)(1)-(5).

### A

The text of § 2D1.1(b)(1), the firearm-enhancement provision, instructs district courts as follows: "If a dangerous weapon (including a firearm) was

7

possessed, increase by 2 levels." To justify this enhancement, "the government must either establish by a preponderance of the evidence that the firearm was present at the site of the charged conduct or prove that the defendant possessed a firearm during conduct associated with the offense of conviction." *Stallings*, 463 F.3d at 1220. "[P]roximity between guns and drugs, without more, is sufficient to meet the government's initial burden under § 2D1.1(b)(1)." *United States v. Carillo-Ayala*, 713 F.3d 82, 91 (11th Cir. 2013). In other words, "the government benefits from a rebuttable presumption that a firearm, if present—just present, not present in proximity to drugs—is 'connected with the offense.'" *Id.* at 90. If the government satisfies its initial burden, the defendant must then "demonstrate that a connection between the weapon and the offense was 'clearly improbable.'" *Stallings*, 463 F.3d at 1220.

Mr. Carrasquillo says in his brief that the district court's § 2D1.1(b)(1) finding "is unsupported," Br. for Appellant at 21, but he does not elaborate on this claim. In any event, the district court was not required to accept the defense's contention that Mr. Carasquillo had no need for a firearm because all he did was provide an address to a drug dealer for delivery of the cocaine by FedEx. *See* D.E. 120 at 5-7. An attorney's factual assertion at a sentencing hearing is not evidence unless stipulated to, *see United States v. Washington*, 714 F.3d 1358, 1361 (11th Cir. 2013) (citing

8

cases), and here Mr. Carrasquillo did not present any evidence to support his version of events.

Given that Mr. Carrasquillo put the cocaine in his truck after the initial FedEx delivery to the home, the district court could have reasonably found that he was going to transport the cocaine to another location with the loaded Glock as protection.  The fact that Mr. Carrasquillo had a permit for the Glock did not compel a different conclusion.  *See, e.g., United States v. George*, 872 F.3d 1197, 1204 (11th Cir. 2017) (explaining that a district court's § 2D1.1(b) determination "is a factual finding that we review under the clear error standard").

**B**

The safety-valve provision, § 5C1.2, provides for a two-level downward adjustment (and a sentence without regard to an otherwise-applicable statutory minimum) if, among other things, "the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense."  § 5C1.2(a)(2).  *See also* 18 U.S.C. § 3553(f)(2) (setting out the same requirement).  The defendant has the burden of satisfying § 5C1.2(a)(2), as well as the other criteria for safety-valve relief, by a preponderance of the evidence.  *See Carillo-Ayala*, 713 F.3d at 90.

As we have explained, "not all defendants who receive the [firearm] enhancement under § 2D1.1(b)(1) are precluded from relief under [§ 5C1.2(a)(2)]."

*Id*. at 91.  Our sister circuits are so far in agreement.  *See generally United States v. Bolton*, 858 F.3d 905, 914 (4th Cir. 2017) (citing cases from the First, Sixth, Ninth, and Tenth Circuits).

To satisfy § 5C1.2(a)(2), a defendant who receives a § 2D1.1(b) enhancement must show that it is more likely than not that the possession of the firearm was not in connection with the offense.  *See Carillo-Ayala*, 713 F.3d at 91.  "Where 'a firearm was possessed' by the defendant personally, and yet the defendant also seeks the protection of the safety valve, the district court must determine whether the facts of the case show that a 'connection' between the firearm and the offense, though possible, is not probable."  *Id*.  "[T]he presence of a gun within a defendant's dominion and control during a drug trafficking crime ordinarily *will* suffice to show . . . that the defendant possessed the firearm in connection with the offense."  *Id*. at 96.[1]

---

[1] The daylight between § 2D1.1(b)(1) and § 5C1.2(a)(2) is most likely to exist in cases where § 2D1.1(b)(1) applies "based on a co-conspirator's reasonably foreseeable possession of a firearm in furtherance of jointly undertaken criminal activity."  *United States v. Delgado-Paz*, 506 F.3d 652, 655 (8th Cir. 2007).  In such circumstances, "the circuits are unanimous in holding that possession of a weapon by a defendant's co-conspirator does not render the defendant ineligible for safety-valve relief unless the government shows that the defendant induced the co-conspirator's possession."  *Id*. at 655-56 (collecting cases).  As we have put it, "[m]ere possession by a co-defendant, . . . while sufficient to trigger [§] 2D1.1(b)(1), is insufficient to knock a defendant out of the safety-valve protections of [§] 5C1.2."  *United States v. Clavijo*, 165 F.3d 1341, 1343 (11th Cir. 1999).

In two unpublished opinions, we have vacated sentences and remanded when district courts conflated the § 2D1.1(b) and § 5C1.2(a)(2) standards. Because Mr. Carrasquillo relies on these decisions, we summarize them below.

In *United States v. Garcia*, 590 Fed. App'x. 915, 919 (11th Cir. 2014), we held that a finding that a defendant "failed to show that a connection between the guns and cocaine was clearly improbable . . . does not address whether safety-valve relief was properly denied based on the firearm enhancement." We explained that "to negate the government's initial showing of possession to avoid the enhancement, a defendant must show that it is clearly improbable the gun was connected to the offense, but to qualify for the safety valve, he need only tip the scale toward improbability—a lighter burden." *Id*.

The facts were similar in *United States v. Myrie*, 753 Fed. Appx. 855, 857 (11th Cir. 2018). There, the district court had found that the presence of a firearm precluded safety-valve relief. Notably, in discussing the safety-valve issue, the district court in *Myrie* had "stated the legal standard was whether it was 'clearly improbable that the gun did not have a connection to the drug trafficking.'" *Id*. That, of course, is the § 2D1.1(b)(1) standard, and not the § 5C1.2(a)(2) standard, so we remanded for consideration under the proper standard. We acknowledged that there was "some record evidence that the firearm was 'found in close proximity to drugs,'" but reasoned that "the district court did not make a fact finding in that regard." *Id*.

11

And even had the court made such a finding, "a defendant seeking safety[-]valve relief may demonstrate that despite such proximity, there was no connection between the firearm and his drug offense." *Id*. at 859.

This case, however, differs from *Garcia* and *Myrie* in a key respect. In each of those cases, the district courts had found that the defendant failed to establish for purposes of § 2D1.1(b) that a connection between the firearm and the drugs was clearly improbable—and from there had determined that safety-valve relief was necessarily unavailable. Here, the district court found under § 2D1.1(b)(1) that the Glock was "definitely connected" to the offense because Mr. Carrasquillo was going to drive the truck carrying the cocaine with the loaded firearm for protection. Because that factual finding is not clearly erroneous, Mr. Carrasquillo has failed to establish by a preponderance of the evidence that the Glock was not possessed "in connection with the offense" under § 5C1.2(a)(2). There is overlap between § 2D1.1(b) and § 5C1.2(a)(2), and that overlap results from the common issue of connectivity. A § 2D1.1(b)(1) factual finding that there is a connection between the firearm and the offense, if supported by the record, means that the defendant cannot satisfy § 5C1.2(a)(2). *See United States v. Poyato*, 454 F.3d 1295, 1300 (2006) (where the district court found "by a preponderance of the evidence that [the

12

defendant] did in fact possess a firearm in connection with the offense," that finding rendered [the defendant] ineligible for the safety valve").[2]

As we have remarked, the number of defendants who are subject to the § 2D1.1(b)(1) enhancement and who can also satisfy § 5C1.2(a)(2) "will undoubtedly be rare." *Carillo-Ayala*, 713 F.3d at 91. Given the district court's § 2D1.1(b)(1) factual findings, Mr. Carrasquillo does not fall into that narrow category of defendants.

## IV

Although we affirm Mr. Carrasquillo's sentence, there appears to be a clerical error in the final judgment against him that requires a limited remand. Mr. Carrasquillo pled guilty to the two charges in the indictment, and Count One charged him with conspiracy to possess 500 grams or more of cocaine with the intent to distribute, in violation of 21 U.S.C. § 846. *See* D.E. 1. The judgment, however, lists Count One as conspiracy to distribute *and* to possess 500 grams or more of cocaine with intent to distribute. *See* D.E. 147. "We may *sua sponte* raise the issue of clerical errors in the judgment and remand with instructions that the district court

---

[2] Assuming without deciding that the district court committed procedural error in not conducting separate analyses under § 2D1.1(b) and § 5C1.2(a)(2), any such error was harmless. The court's factual findings meant that Mr. Carrasquillo did not show by a preponderance of the evidence that his possession of the Glock was unconnected to his possession of the cocaine. *See Bolton*, 858 F.3d at 914.

correct the errors," *United States v. Massey*, 443 F.3d 814, 822 (11th Cir. 2006), and we will do so here.

We affirm the district court's denial of safety-valve relief to Mr. Carrasquillo, and remand for the sole purpose of correcting the clerical error in the judgment as to Count One.

**AFFIRMED IN PART, AND VACATED AND REMANDED IN PART.**